YATES, Judge.
On August 9, 1995, Mary Nell Bryan and Charles A. Bryan sued State Farm Mutual Automobile Insurance Company (“State Farm”); Zack Worsham and Doris Chavis, State Farm claim representatives; and James Powell Breazeale and James C. Breaz-eale, seeking to nullify a release and settlement document relating to an automobile accident involving vehicles driven by Mrs. Bryan and James Powell. The Bryans alleged that the release was invalid because, they claimed, Mrs. Bryan was “in a weakened mental and physical condition” and was “incapable of knowing or appreciating the extent and importance of said release” at the time it was signed. The Bryans sought compensatory and punitive damages from State Farm, Worsham, and Chavis for alleged false representations of material fact in the handling of their claim. The Bryans sought compensatory damages from the Breazeales for James P. Breazeale’s alleged negligence in the operation of an automobile. Mr. Bryan alleged a loss of consortium.
On December 10, 1996, the Breazeales moved for a summary judgment. On December 17, 1996, State Farm, Worsham, and Chavis moved for a partial summary judgment. On June 27, 1997, the court granted the Breazeales’ motion. There is no indication whether the court ever ruled on the motion of State Farm, Worsham, and Chav- *1304 is.[1] On July 12, 1997, the court certified the Breazeales’ summary judgment as final. The Bryans appeal. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975.
In reviewing the disposition of a motion for summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co., 581 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court must review the record in the light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).
On August 1,1994, Mrs. Bryan was injured in a collision between the automobile she was driving and the one owned by James C. Breazeale and operated by James Powell Breazeale. Both cars were insured by State Farm. Chavis was assigned to handle the Bryans’ claim and Worsham was assigned to handle the Breazeales’ claim. As a result of the collision, Mrs. Bryan suffered injuries to her shoulder, an arm, her neck, and her back. It was later discovered that she also had closed-head injuries.
Mrs. Bryan testified by affidavit that following the accident she returned to work but subsequently lost her job because of difficulties she experienced arising from her injuries sustained in the accident. She further testified that in August 1994 Worsham contacted her, saying that he had been assigned to the claim, and took a recorded statement from her. She said that at no time during the conversation did Worsham inform her that he was handling only the liability portion of the claim or that he was only representing the interests of the Breazeales. Mrs. Bryan stated that in September 1994 she contacted Worsham and informed him that she needed help with her bills because she had lost her job. Worsham scheduled a September 21 meeting with the Bryans.
Mrs. Bryan said that at the September meeting she was emotional and that she had told Worsham that she was heavily medicated and in a great deal of pain. She stated that her husband had specifically told Wors-ham at that time “that he did not want any funds to come from [her] policy and that any payments should come from the Breazeale policy.” She also stated that Worsham did not explain the document he asked her to sign and did not indicate “in any way that the money was in any way a full and final settlement.” Worsham presented the Bryans with two checks totalling over $9,000. Mrs. Bryan stated that Worsham instructed the Bryans to bring her medical bills to him and also told them that the file could be reopened at a later date, if necessary. She said that on February 7, 1995, she learned that Worsham represented the Breazeales.
Mr. Bryan testified that after the accident he was told by his insurance agent to contact the claims department. He was not given the name of a specific contact person; when he telephoned the claims department, he spoke with Worsham. He stated that he did not know that Worsham was representing the Breazeales. Mr. Bryan also testified that he had repeatedly told Worsham that he did not want any payments charged against his wife’s policy.
Mr. Bryan stated that he was concerned about his wife and that he did not read the document he signed at the September meeting with Worsham. However, he said he asked Worsham why his signature was needed when the policy was in his wife’s name, and that Worsham had stated “it was customary to get both signatures.” Mr. Bryan also stated that it was his understanding that *1305 State Farm, under Breazeale’s policy, was going “to take care of all of [Mrs. Bryan’s] needs, her medical needs and her lost time from work needs.” He said that State Farm issued the Bryans a check for over $9,000. Mr. Bryan stated that after the meeting Worsham instructed him to bring, or to send to him. all of the medical bills.
Mr. Bryan stated that he and Mrs. Bryan thought that State Farm was paying the medical bills. He testified that when Mrs. Bryan’s doctor wanted a second MRI performed, he telephoned State Farm to see whether the cost would be covered. It was then that the Bryans had their first contact with Chavis, the claims representative assigned to handle their interests. Chavis told Mr. Bryan that they had “used up” their $5,000 medical coverage under their policy. According to Mr. Bryan, this was the first time there had been any discussion about money being paid under their policy.
Worsham testified that the September 21, 1994, meeting was scheduled because Mrs. Bryan had contacted him for help in paying her bills. Worsham stated that the Bryans had never told him that they wanted payments to come out of Breazeale’s policy. He further testified that he had not considered anything that the Bryans had said in the meeting as a request for an advance. He said that it was clear that the payment made to the Bryans constituted a settlement of all claims and that the payment was going to be all the compensation, other than medical payments, that the Bryans would receive. He testified: “I think we established, during the course of our conversation, the Bryans and I, that I was working on a liability basis. And I would be making settlement and taking the release. That would conclude the claim. I think that was abundantly clear.” However, when asked about the explanation given to Mr. Bryan about his signature, Worsham could not remember whether he had told Mr. Bryan that his signature constituted a settlement of his claim.
The record does not contain an order specifying the basis for the judgment. However, the Bryans’ testimony as to the signing of the release clearly contradicts that of Wors-ham. This dispute creates a genuine issue of material fact. Accordingly, the judgment is reversed and the ease is remanded for further proceedings.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
ROBERTSON, P.J., and MONROE, J., concur.
THOMPSON, J., concurs specially.
CRAWLEY, J., concurs in the result.

. Chavis was subsequently dismissed as a party defendant.