WRIGHT, Retired Appellate Judge.
Karen Langley, the mother of Fallon Langley, sued the City of Saraland (“City”) and the Board of Water and Sewer Commissioners of the City of Saraland (“Saraland Water Service”), alleging negligence and wantonness. Both the City and the Saraland Water Service filed summary-judgment motions. The trial court entered a summary judgment in favor of the City, but denied Saraland Water Service’s motion. The trial court subsequently approved a pro ami settlement agreement between the Langleys and the Saraland Water Service in the amount of $50,000. The Langleys appeal the summary judgment entered in favor of the City. This case was transferred to this court pursuant to § 12-2-7(6), Ala.Code 1975.
A motion for a summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. McDonald v. Servpro, 581 So.2d 859 (Ala.Civ.App.1991). If the moving party makes a prima facie showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to go forward with evidence demonstrating the existence of a genuine issue of fact. Grider v. Grider, 555 So.2d 104 (Ala.1989). In order to defeat a properly supported summary-judgment motion, the nonmovant must create a genuine issue of material fact by presenting substantial evidence. McDonald. Substantial evidence is “ ‘evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions as to the existence of the fact sought to be proven.’ [Ala.Code 1975,] § 12-21-12(d).” Economy Fire & Casualty Co. v. Goar, 551 So.2d 957, 959 (Ala.1989). An appellate court reviews the record in a light most favorable to the nonmovant and resolves all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, 613 So.2d 359 (Ala.1993).
The record reflects that the minor child was injured when she ran through her front yard and stepped into a hole located at the water meter box. The water meter box and the hole were located several feet from the street. The Saraland Water Service, a separately incorporated water board, is responsible for the maintenance of water services within the city, including the water meter box located on the Lang-leys’ property.
Within its municipal limits, the City does provide and maintain a system of sanitary sewer collection lines that service the various residents, including the Langleys. In providing this service, the City maintains a sewage collection line that runs under the street where the Langleys live. The City also maintains lateral collection lines that lead to each of the subdivided residential lots on the Langleys’ street. When a home is constructed, it is the owner’s responsibility to make a connection to the city lateral. The City’s maintenance responsibility ends at that lateral. The owner has the responsibility to maintain the *816 connection and the line that leads from the city lateral into the home.
Prior to the time that the minor child was .injured, the Langleys made several complaints to both the City and the Sara-land Water Service about the hole at the water meter box and a leak in the water line. It was discovered that the leak in the water line was on the Langleys’ side of the water meter box and was, therefore, them responsibility to fix.
After the accident, the area around the water meter box was excavated, and it was determined that there were also leaks in the sewer line located several feet beneath the water meter box. During this excavation, it was discovered that the contractor who originally built the Langleys’ home made the connection to the city lateral using a smaller size pipe and that instead of using a gasket to make this connection, merely poured cement-like material around the connection. There was also another similar connection in the line located further into the Langleys’ yard toward the home. At both these joints, the cement-like material had fallen away and the lines were leaking. It is undisputed that both of these leaks occurred on the Langleys’ privately owned sewer line, and not on the sewer line or lateral owned and maintained by the City.
Tort liability of a municipality in Alabama is limited. Section 11-47-190, Ala. Code 1975, provides in pertinent part the following:
“No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation ... unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body....”
Regarding the negligence claim, the burden was on the Langleys to prove that a defect existed in the sewer line or in the laterals. The evidence was undisputed that the defect was on the Langleys’ private property. The City does not have a duty to correct a defect on private property or in a sewer fine owned by an individual and not the City. City of Dothan v. Sego, 646 So.2d 1363 (Ala.1994).
For liability to be imposed on a municipality, there must first be a breach of a legal duty owed to the individual. “There must be either an underlying common law duty or statutory duty of care with respect to the alleged tortious conduct.” Hilliard v. City of Huntsville, 585 So.2d 889, 890 (Ala.1991). The Langleys contend that the City breached a duty established under § 11-50-50, Ala.Code 1975. That section provides the following:
“All cities and towns may make all needful provisions for the drainage of such city or town, may construct and maintain efficient sanitary and stormwa-ter sewers or sewer systems, either within or without the corporate limits of the city or town, may construct and maintain ditches, surface drains, aqueducts and canals and may build and construct underground sewers through private or public property, either within or without the corporate limits of such city or town, but just compensation must first be made for the private property taken, injured or destroyed.”
Following the excavation, it appeared that all the defects occurred in the sewer line located in the Langleys’ front yard, not in the sewer lines or laterals maintained by the City. Nothing in the statute authorizing Alabama municipalities to construct and maintain sanitary sewer systems indicates the establishment of a duty to maintain the sewer lines coming from the residences of private landowners to the primary sewer line. Analogously, municipalities are not subject to liability for the *817 failure to inspect the sewer lines of private landowners. Rich v. City of Mobile, 410 So.2d 385 (Ala.1982). It is undisputed that the cause of the leak in the sewer lines under the Langleys’ yard was the deterioration of the initial connection made by the builder from the Langleys’ residence to the sewer lateral. The City owed no duty to maintain the sewer line connections coming from the Langleys’ residence. We find the entry of the summary judgment on the negligence claim to- be proper. Furthermore, according to the language of the statute, no claim for wantonness may be maintained against the City. Hilliard, 585 So.2d at 892.
The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active duty status as a judge of this court under the provisions of § 12 — 18—10(e), Code 1975.
AFFIRMED.
ROBERTSON, P.J., and YATES, CRAWLEY, and THOMPSON, JJ„ concur.
MONROE, J., concurs in the result.